## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

|  |  |
|---|---|
| EIGHT MILE STYLE, LLC; and MARTIN AFFILIATED, LLC, *Plaintiffs*, v. META PLATFORMS, INC., f/k/a FACEBOOK, INC.; INSTAGRAM, LLC; and WHATSAPP, LLC, *Defendants*. | Case No. 2:25-CV-11618-BRM-DRG Hon. Brandy R. McMillion United States District Judge Hon. David R. Grand United States Magistrate Judge |

## DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Defendants Meta Platforms, Inc., f/k/a Facebook, Inc.; Instagram, LLC; and WhatsApp LLC (collectively, "Meta") hereby move to dismiss the Complaint filed by Plaintiffs Eight Mile Style, LLC and Martin Affiliated, LLC (together, "Eight Mile") pursuant to Fed. R. Civ. P. 12(b)(6). Meta's Motion is based on the supporting Memorandum of Law filed concurrently with this Motion, and any additional material and arguments as may be considered in connection with the Motion.

Pursuant to Local Rule 7.1, Meta certifies that the parties conferred in good faith on September 11, 2025, by teleconference regarding this Motion. Meta's counsel explained the nature of and basis for the requested relief, but Eight Mile did not concur in the relief sought.

Meta respectfully requests that the Court grant its Motion and dismiss Eight Mile's Complaint in its entirety.

Date: September 18, 2025

Archis A. Parasharami
1999 K Street NW
Washington, DC 20006-1101
aparasharami@mayerbrown.com
Tel: (202) 263-3000

Andrew S. Rosenman (P54869)
71 South Wacker Drive
Chicago, Illinois 60606
arosenman@mayerbrown.com
Tel: (312) 782-0600

MAYER BROWN LLP

By: /s/ *Matthew D. Ingber*
Matthew D. Ingber
Allison Aviki (admission pending)
Rory K. Schneider (admission pending)
David Yolkut
1221 Avenue of the Americas
New York, New York 10020
mingber@mayerbrown.com
aaviki@mayerbrown.com
rschneider@mayerbrown.com
dyolkut@mayerbrown.com
Tel: (212) 506-2500

*Attorneys for Defendants Meta Platforms,*
*Inc., f/k/a Facebook, Inc.; Instagram, LLC;*
*and WhatsApp LLC*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

|  |  |
|---|---|
| EIGHT MILE STYLE, LLC; and MARTIN AFFILIATED, LLC, | Case No. 2:25-CV-11618-BRM-DRG |
| *Plaintiffs*, | Hon. Brandy R. McMillion United States District Judge |
| v. | |
| META PLATFORMS, INC., f/k/a FACEBOOK, INC.; INSTAGRAM, LLC; and WHATSAPP, LLC, | Hon. David R. Grand United States Magistrate Judge |
| *Defendants*. | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Archis A. Parasharami
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006-1101
aparasharami@mayerbrown.com
Tel: (202) 263-3000

Andrew S. Rosenman (P54869)
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606
arosenman@mayerbrown.com
Tel: (312) 782-0600

Matthew D. Ingber
Allison Aviki (admission pending)
Rory K. Schneider (admission pending)
David Yolkut
MAYER BROWN LLP
1221 Avenue of the Americas
New York, New York 10020
mingber@mayerbrown.com
aaviki@mayerbrown.com
rschneider@mayerbrown.com
dyolkut@mayerbrown.com
Tel: (212) 506-2500

*Attorneys for Defendants Meta Platforms, Inc., f/k/a Facebook, Inc.; Instagram, LLC; and WhatsApp LLC*

# TABLE OF CONTENTS

**Page**

CONCISE STATEMENT OF THE ISSUES PRESENTED................................. vii

CONTROLLING OR MOST APPROPRIATE AUTHORITIES....................... viii

INTRODUCTION ........................................................................................1

BACKGROUND ........................................................................................3

    A.    Facebook, Instagram, and WhatsApp .................................................3

    B.    Meta's Licensing of EMS Compositions ............................................6

LEGAL STANDARD....................................................................................9

ARGUMENT ..............................................................................................9

I.    Eight Mile Has Failed To Adequately Allege Direct Copyright Infringement ........................................................................................9

    A.    Eight Mile's Failure to Adequately Allege Facts Identifying the Allegedly Infringing Copies Requires Dismissal.................................9

    B.    Eight Mile's Failure to Identify the Allegedly Infringing Copies Deprives Meta of a Full and Fair Opportunity to Defend Itself ........12

II.    Eight Mile's Secondary Liability Claims All Fail Because It Has Not Adequately Alleged Underlying Infringement By Users ............................14

III.    Eight Mile's Contributory Copyright Infringement Claim Fails For Additional Reasons ..........................................................................15

IV.    Eight Mile's Inducement "Claim" Is Not A Standalone Cause Of Action..................................................................................................22

V.    Eight Mile Has Not Adequately Pleaded A Vicarious Infringement Claim..................................................................................................23

CONCLUSION ..........................................................................................25

-i-

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen Trench Safety Corp. v. Ozark Laser Sys.*,
  2015 WL 4475645 (W.D. Mich. July 21, 2015)................................................14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)............................................................................................9

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)............................................................................................9

*Blizzard Ent., Inc. v. Lilith Games (Shanghai) Co. Ltd.*,
  149 F. Supp. 3d 1167 (N.D. Cal. 2015)..............................................................12

*Bridgeport Music, Inc. v. Diamond Time, Ltd.*,
  371 F.3d 883 (6th Cir. 2004) .............................................................15, 16, 20

*Bus. Casual Holdings, LLC v. YouTube, LLC*,
  2023 WL 6842449 (2d Cir. Oct. 17, 2023) .......................................................18

*Capitol Recs., Inc. v. MP3tunes, LLC*,
  2009 WL 3364036 (S.D.N.Y. Oct. 16, 2009)......................................................23

*Capitol Recs., LLC v. Vimeo, LLC*,
  826 F.3d 78 (2d Cir. 2016) ................................................................................23

*Clark v. Jackson*,
  2023 WL 2787325 (6th Cir. Apr. 5, 2023)...........................................................6

*Cobbler Nev., LLC v. Gonzales*,
  901 F.3d 1142 (9th Cir. 2018) ...........................................................................22

*Concord Music Grp., Inc. v. X Corp.*,
  2024 WL 945325 (M.D. Tenn. Mar. 5, 2024).................................16, 20, 21, 22

*Dorchen/Martin Assocs. v. Brook of Cheboygan, Inc.*,
  838 F. Supp. 2d 607 (E.D. Mich. 2012) .............................................................11

# TABLE OF AUTHORITIES
(Continued)

**Page(s)**

*Eight Mile Style, LLC v. Spotify USA Inc.*,
    745 F. Supp. 3d 632 (M.D. Tenn. 2024) .................................................................6

*Ellison v. Robertson*,
    357 F.3d 1072 (9th Cir. 2004) .............................................................................25

*Epidemic Sound, AB v. Meta Platforms, Inc.*,
    No. 22-cv-04223-JSC (N.D. Cal. Nov. 28, 2022), ECF No. 37 ........................12

*Force v. Facebook, Inc.*,
    934 F.3d 53 (2d Cir. 2019) ...................................................................................22

*Ford Motor Co. v. Autel US, Inc.*,
    2015 WL 5729067 (E.D. Mich. Sept. 30, 2015) .................................................11

*Gershwin Pub. Corp. v. Columbia Artists Mgmt., Inc.*,
    443 F.2d 1159 (2d Cir. 1971) ..............................................................................16

*Global-Tech Appliances, Inc. v. SEB S.A.*,
    563 U.S. 754 (2011).............................................................................................17

*Gordon v. Nextel Commc'ns & Mullin Advert., Inc.*,
    345 F.3d 922 (6th Cir. 2003) ...............................................................................24

*Hill v. Waters*,
    2018 WL 11356706 (S.D. Ohio Feb. 2, 2018) ...................................................11

*IO Grp., Inc. v. Jordon*,
    708 F. Supp. 2d 989 (N.D. Cal. 2010)................................................................23

*KBL Corp. v. Arnouts*,
    646 F. Supp. 2d 335 (S.D.N.Y. 2009) ................................................................23

*LivePerson, Inc. v. 24/7 Customer, Inc.*,
    83 F.Supp.3d 501 (S.D.N.Y. 2015) ....................................................................11

*Luvdarts, LLC v. AT&T Mobility, LLC*,
    710 F.3d 1068 (9th Cir. 2013) .........................................................18, 19, 20, 26

# TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*Masck v. Sports Illustrated*,
    2013 WL 2626853 (E.D. Mich. June 11, 2013) ................................................26

*MGM Studios, Inc. v. Grokster, Ltd.*,
    545 U.S. 913 (2005) ...........................................................................*passim*

*Michalak v. Mich. State Police*,
    2025 WL 2159028 (E.D. Mich. July 30, 2025) .................................................18

*Nat'l Bus. Dev. Servs., Inc. v. Am. Credit Educ. and Consulting, Inc.*,
    299 F. App'x 509 (6th Cir. 2008) .........................................................10, 11, 12

*NCR Corp. v. Korala Assoc., Ltd.*,
    512 F.3d 807 (6th Cir. 2008) ...........................................................15, 16, 17, 20

*Rassamni v. Fresno Auto Spa, Inc.*,
    2018 WL 4616388 (E.D. Cal. Sep. 24, 2018) ...................................................11

*Schneider v. YouTube, LLC*,
    674 F. Supp. 3d 704 (N.D. Cal. 2023) ..............................................................19

*Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*,
    605 U.S. 280 (2025) ........................................................................................17

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
    464 U.S. 417 (1984) ........................................................................................16

*Sony Discos, Inc. v. E.J.C. Fam. P'ship*,
    2010 WL 1270342 (S.D. Tex. Mar. 31, 2010) ..................................................21

*Sony Music Ent., Inc. v. Cox Commc'ns, Inc.*,
    144 S. Ct. 1206 (2024) .....................................................................................17

*Taylor v. IBM*,
    54 F. App'x 794 (5th Cir. 2002) ......................................................................11

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007) ..........................................................................................7

# TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*Tomelleri v. SunFrog, LLC*,
 721 F. Supp. 3d 566 (E.D. Mich. 2024) .......................................................15, 24

*Trent P. Fisher Enters., LLC v. SAS Automation, LLC*,
 2021 WL 1209637 (S.D. Ohio Mar. 31, 2021)....................................................13

*Twitter, Inc. v. Taamneh*,
 598 U.S. 471 (2023)....................................................................................17, 20, 21

*UMG Recordings, Inc. v. Shelter Cap. Partners LLC*,
 718 F.3d 1006 (9th Cir. 2013) ......................................................................19, 23

*White v. DistroKid*,
 738 F. Supp. 3d 387 (S.D.N.Y. 2024) .................................................................25

*Zagorsky-Beaudoin v. Rhino Ent. Co.*,
 2019 WL 4259788 (D. Ariz. Sept. 9, 2019) .................................................18, 25

*Zhang v. Twitter Inc.*,
 2023 WL 5493823 (N.D. Cal. Aug. 23, 2023), *aff'd*, 2025 WL
 66050 (9th Cir. Jan. 10, 2025) .............................................................................22

## Statutes

17 U.S.C. § 412 ...............................................................................................................13

17 U.S.C. § 507 ...............................................................................................................13

17 U.S.C. § 512 ......................................................................................................*passim*

## Other Authorities

*About Instagram*, Instagram, https://about.instagram.com/about-us........................3

*Access to the Licensed Music Library on Instagram*, Instagram,
 https://help.instagram.com/402084904469945/ ..................................................5

*Company Information*, Meta, https://www.meta.com/about/company-
 info/ ......................................................................................................................3

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

Fed. R. Civ. P. 12 ................................................................................................9, 26

*Reporting Copyright Infringements*, Facebook, https://www.facebook.
    com/help/400287850027717/ ................................................................................5

*Rights Manager*, Facebook, https://www.facebook.com/rights_
    manager...................................................................................................................6

*Terms of Service*, WhatsApp, https://www.whatsapp.com/legal/terms-
    of-service.................................................................................................................4

*Terms of Use*, § 3.2, Facebook, https://www.facebook.com/terms ...........................4

*Terms of Use*, § 4.2, Instagram, https://help.instagram.com/termsofuse..................4

*Turn Up the Volume: Add Music to Your WhatsApp Status*,
    WhatsApp, https://blog.whatsapp.com/add-music-to-your-
    whatsapp-status......................................................................................................4

**CONCISE STATEMENT OF THE ISSUES PRESENTED**

Should the Court dismiss each of Plaintiffs' direct and secondary copyright infringement claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim?

Defendants' Answer: Yes.

# CONTROLLING OR MOST APPROPRIATE AUTHORITIES

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)..............................................................................9

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)..............................................................................9

*Bridgeport Music, Inc. v. Diamond Time, Ltd.,*
    371 F.3d 883 (6th Cir. 2004) ...............................................15, 16, 20

*Concord Music Grp., Inc. v. X Corp.,*
    2024 WL 945325 (M.D. Tenn. Mar. 5, 2024)..................16, 20, 21, 22

*MGM Studios, Inc. v. Grokster, Ltd.,*
    545 U.S. 913 (2005).....................................................................*passim*

*Nat'l Bus. Dev. Servs., Inc. v. Am. Credit Educ. and Consulting, Inc.,*
    299 F. App'x 509 (6th Cir. 2008) ..........................................10, 11, 12

*Twitter, Inc. v. Taamneh,*
    598 U.S. 471 (2023)............................................................17, 20, 21

**Statutes**

17 U.S.C. § 512 ...............................................................................*passim*

**Other Authorities**

Fed. R. Civ. P. 12 ................................................................................9, 26

## INTRODUCTION

Plaintiffs Eight Mile Style (EMS) and Martin Affiliated, LLC (together, "Eight Mile") boldly declare that there is widespread infringement of their works across Facebook, Instagram, and WhatsApp—three services owned or operated by Meta. But while the Complaint is long on rhetoric, it is remarkably short on specifics. The Complaint points to 243 Eight Mile compositions, but (with two exceptions) never says which of them were allegedly infringed—let alone identifies when or where the infringement occurred, or by whom. These omissions are not minor; they go to the heart of a plausible copyright infringement claim.

These pleading deficiencies are fatal to all of Eight Mile's claims. Although the Complaint fails to draw precise lines, it appears to assert two categories of claims: (1) a direct infringement claim based on allegedly unlicensed compositions made available through Meta's "Music Library"; and (2) secondary infringement claims based on "user-generated content," when users upload content to Meta's services that allegedly contain infringing material (either created by the users themselves or drawn from the Music Library).

The direct infringement claim fails because Eight Mile does not allege any infringing act by any Meta defendant—other than pointing to two compositions that allegedly "remain[ed] available" on Meta's services at the time of filing (and have since been removed). Beyond that (inadequate) allegation, Eight Mile omits the

basic "who, what, when, where, and how" required to plead a plausible claim. Its secondary infringement claims fare no better: each requires sufficient allegations of direct infringement through content posted by Meta's users—something the Complaint sorely lacks. Eight Mile's conclusory assertions—made on "information and belief"—that "millions of videos" containing its works have been viewed "billions of times," *see* ECF No. 1, PageID.2, ¶ 3, are unsupported by ***even a single example*** of user-based infringement. It's not enough to claim that unidentified compositions were infringed ***somewhere*** on Meta's services at some unknown time; without a modicum of support identifying any—let alone "rampant"—user infringement, Eight Mile's secondary infringement claims cannot get off the ground.

But even if Eight Mile had adequately pleaded direct infringement by users of Meta's services, its secondary infringement claims would still fail. *First,* Eight Mile hasn't adequately alleged the required elements for a contributory infringement claim—*i.e.*, facts showing that each of the Meta Defendants actually knew about *and* "intentionally induc[ed] or encourage[ed] direct infringement." *MGM Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005). That standard, which requires "culpable intent" (*id.* at 934) to cause infringement, isn't plausibly alleged here.

*Second*, Eight Mile's inducement claim isn't a standalone claim at all; instead, it's merely an alternative theory of contributory infringement. Moreover, the Complaint doesn't plausibly allege that Meta acted consciously and culpably.

*Third*, the vicarious infringement claim should be dismissed because Eight Mile has not plausibly alleged either that Meta received a direct financial benefit flowing directly from any user-generated infringement or that Meta is able to supervise or control the countless posts that billions of users create every day.

## BACKGROUND

Defendant Meta Platforms is one of the best-known technology companies in the world, with billions of daily active users across its services—including Facebook, Instagram, and WhatsApp. ECF No. 1, PageID.7, ¶¶ 15-17.[1]

### A.    Facebook, Instagram, and WhatsApp

Facebook is a social media service through which users create personal or commercial profiles to connect with other users and share content. *Id*. ¶ 15; *see also* https://www.meta.com/about/company-info/. Instagram is a photo- and video-sharing social media service. ECF No. 1, PageID.7, ¶ 16; *see also* https://about.instagram.com/about-us. Facebook and Instagram allow users to add photos, videos, text, and music to their "posts" (content that appears and then remains on one's "profile" page), "stories" (content that disappears after 24 hours), and "reels" (short videos that generally last 5-60 seconds). ECF No. 1, PageID.14-15, ¶ 47. In addition, on Instagram, users can send 30 seconds of music to other users through a "Direct

---

[1] In addition to Meta Platforms, Inc., f/k/a Facebook, Inc., Eight Mile has named as defendants two subsidiaries of Meta: Instagram, LLC; and WhatsApp LLC. We refer to these defendants collectively as "Meta."

Message Music Sticker." *Id.* And while WhatsApp is primarily a private messaging service, only as of March 2025 have users had the option to post an "update" or "status" that remains available for 24 hours and that can include music. *Id.* at n.8; *see also* https://blog.whatsapp.com/add-music-to-your-whatsapp-status.

The audio on Meta's services comes from one of two sources. The first is from users in which the audio is part of an original user video ("user-generated content") that the user has uploaded to Meta's services. ECF No. 1, PageID.14, ¶ 47.[2] User-generated content is governed by the applicable Terms of Service—all of which (a) prohibit users from "infring[ing] or violat[ing[ someone else's rights, including their intellectual property rights (such as by infringing another's copyright)"; and (b) encourage users to "report content or conduct" that violates their "intellectual property rights." *Terms of Use*, § 3.2, https://www.facebook.com/terms; *Terms of Use*, §§ 4.2-4.3, https://help.instagram.com/termsofuse; *Terms of Service*, https://www.whatsapp.com/legal/terms-of-service.

Meta also maintains a "Music Library," from which users can select and

---

[2] User-uploaded audio is labeled as "Original Audio" in Reels posted to Facebook and Instagram. Users can (1) "save" the audio track from another user's post, including Original Audio, into an accessible library within Facebook or Instagram, from which the audio can be previewed; and/or (2) create a new Reel that uses that same audio content. ECF No. 1, PageID.14-15, ¶ 47. Similarly, the "Reels Remix" function allows a user to put a new audiovisual clip either beside or after the other user's Reel, and then share that new combined Reel (with the prior user's Reel embedded in it) in their feed. *Id.*

incorporate music into their videos. ECF No. 1, PageID.14, ¶ 46. The sound recordings in the Music Library are sourced directly from record labels and music distributors under license agreements in which the providers stand behind the content they provide and grant to Meta all rights necessary to offer the content for use by Meta's users.[3] Separately, Meta licenses the compositions embodied in the sound recordings included in its Music Library from music publishers, performing rights organizations, and collective management organizations.

Meta also follows best practices under the Digital Millennium Copyright Act ("DMCA"). *See* 17 U.S.C. § 512. Meta maintains robust notice-and-takedown policies, procedures, and infrastructure, including a designated agent registered with the Copyright Office to facilitate a fast, easy process for reporting potential infringement.[4] Meta also offers a Rights Manager tool—a highly-sophisticated technology that allows rightsholders to upload reference files of their copyrighted material, which Meta then scans to detect audio, video, or images across its services that may match that material. *See*, *e.g.*, *Rights Manager*, https://www.facebook.com/rights_manager.

---

[3] *See* Instagram, *Access to the Licensed Music Library on Instagram*, https://help.instagram.com/402084904469945/ ("Meta is obligated to uphold our agreements with the rights holders of the music that's available in our licensed music library. These agreements are designed to protect artists, songwriters, and their works.").

[4] *See* Facebook, *Reporting Copyright Infringements*, https://www.facebook.com/help/400287850027717/ ("The fastest and easiest way to send a DMCA report of copyright infringement to our designated agent is to contact Meta").

## B.    Meta's Licensing of EMS Compositions

Plaintiffs ("Eight Mile") own or co-own musical compositions written by Eminem. ECF No. 1, PageID.11, ¶ 31. Eight Mile is notoriously litigious: it is "aware of the money to be made as a victim of infringement," has "improperly chose[n] the cultivation of infringement damages over the proper functioning of the copyright system" through "opportunistic litigation," and has "initiated copyright infringement actions … eight to ten times." *Eight Mile Style, LLC v. Spotify USA Inc.*, 745 F. Supp. 3d 632, 663-68 (M.D. Tenn. 2024) (granting summary judgment against Eight Mile on equitable estoppel grounds).

Eight Mile alleges that in late 2020, Meta began license negotiations with Audiam, Inc., a licensing and collection agency. ECF No. 1, PageID.3, 11-12, ¶¶ 6, 33-40. Meta then entered into two successive licenses with Audiam, each for a two-year term. *Id.* at PageID.3, 12, ¶¶ 6, 42. But Eight Mile's account of the 2020 negotiations is incomplete. While Eight Mile insists that Audiam "did not have the authority" to negotiate on its behalf, *id.* at PageID.3 ¶ 6, documents incorporated by the Complaint say otherwise.[5] In a May 2025 letter (*id.* at PageID.12, ¶ 41), Audiam confirmed that "prior to any agreement being in place," an Audiam representative

---

[5] Because Eight Mile "incorporated into the Complaint by reference" correspondence with Audiam and Meta from 2025, *see* ECF No. 1, PageID.12, 16, ¶¶ 41, 49, that material may be considered on a motion to dismiss. *See, e.g., Clark v. Jackson*, 2023 WL 2787325, at *2-3 (6th Cir. Apr. 5, 2023) (citing *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007)). That said, although the correspondence is central to *Eight Mile's* claims, Meta's motion does not turn on it.

had told Meta in 2020 that "***Audiam was authorized to represent EMS in its direct negotiation with Meta***." Ex. 1 (May 23, 2025 Letter from Audiam's Michael Smith to Richard Busch) (emphasis added). Audiam told EMS that it was negotiating with Meta, and EMS even provided Audiam with "a list of compositions that EMS claimed to own." *Id.* Audiam's Jeff Price informed Eight Mile in 2020 that this list "would be used … during his negotiations with Meta." *Id.* And Audiam also told Eight Mile that Price had previously confirmed to Eight Mile that he believed he had "authorization" to "include EMS as an Audiam client" in negotiating with Meta. *Id.*

The Complaint also refers to "recent communication[s]" in 2025 in which Meta expressed a desire to continue its prior partnership and license the EMS Compositions but took them down after Eight Mile "brought this matter to Meta's attention." ECF No. 1, PageID.5, 16, ¶¶ 9, 49. Eight Mile never alleges, however, that it ever sent Meta a cease-and-desist letter or takedown notice through Meta's DMCA-compliant channels to address the infringement it now alleges. *Id.*[6]

Instead, Eight Mile filed this lawsuit, asserting claims for direct copyright

---

[6] Eight Mile refers to a February 2025 email in which Meta expressed disappointment that EMS would not finalize a new agreement, commitment to continue negotiations, and the desire to work "collaboratively" to ensure that EMS content was removed. *See* Ex. 2 (EMS "can report user generated content for removal via Facebook and Instagram's IP reporting channels, including our reporting forms, linked here and here. We are happy to connect our operations team with yours to ensure that any content Eight Mile wishes to block is removed as quickly and smoothly as possible").

infringement, inducement of copyright infringement, contributory infringement, and vicarious infringement. *Id.* at PageID.17-22, ¶¶ 51-87. Yet with minor exceptions, Eight Mile does not actually point to infringing acts—either direct or secondary. Rather, all it does is identify the ways that music can be used on Meta's services, and then summarily accuse Meta of "rampant[]" infringement either by reproducing and storing compositions in its Music Library or by "allowing and encouraging" its users to publish different kinds of user-generated content. *Id.* at PageID.13, ¶ 44.

But when it comes to actual instances of allegedly infringing user-generated content, the Complaint is silent. Eight Mile never identifies ***any*** user-generated content on any of Meta's services that allegedly infringes on any of Eight Mile's copyrights. That failure is particularly striking because Meta directed Eight Mile months ago to its "reporting channels" and even provided links to its reporting forms. *See* note 4, *supra*. No one—not Meta, and not this Court—can identify what (if any) user-generated content is at issue from the Complaint's generic allegations.

Similarly with respect to Meta's Music Library, Eight Mile never alleges which of its compositions are ***even available*** in the Music Library, other than an oblique reference to a karaoke version and two covers of "Lose Yourself" and "Till I Collapse" still being available when Eight Mile sued. ECF No. 1, PageID.5, ¶ 9.

Despite the absence of virtually any specific allegations, Eight Mile demands nearly $110 million in statutory damages.

## LEGAL STANDARD

Under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," but not when the factual allegations are subject to "more likely explanations." *Id.* at 678, 681. A claim needs more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, it must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Id*.

## ARGUMENT

Although the Complaint is imprecise, it asserts two distinct types of claims: direct infringement based on the alleged presence of unlicensed compositions in Meta's Music Library (which users allegedly include with their posts), and secondary infringement based on user-generated content. Neither survives scrutiny.

## I. EIGHT MILE HAS FAILED TO ADEQUATELY ALLEGE DIRECT COPYRIGHT INFRINGEMENT

### A. Eight Mile's Failure to Adequately Allege Facts Identifying the Allegedly Infringing Copies Requires Dismissal

Eight Mile's claim for direct infringement fails at the outset because it does not sufficiently allege that any defendant actually infringed its compositions. As discussed below, it only makes even arguably specific allegations about two

compositions; it doesn't say a word about the remaining 241 compositions. That is, for over 99 percent of the works, it makes no specific allegations at all—not the identity of the purportedly infringing copies, nor which defendant made the copies, nor when any alleged copying occurred. ECF No. 1, PageID.2, 17-18, ¶¶ 3, 53-57.[7]

Without such basic facts, courts have not hesitated to dismiss copyright infringement claims. In one case, the Sixth Circuit concluded that, at minimum, the plaintiff needed to identify the works that allegedly infringed upon the plaintiff's copyright work *and* the manner in which the infringement occurred. *Nat'l Bus. Dev. Servs., Inc. v. Am. Credit Educ. and Consulting, Inc.*, 299 F. App'x 509, 512 (6th Cir. 2008) (affirming dismissal). Indeed, dismissal is routine when a plaintiff, as here, "fails to identify which of Plaintiff's protected work was copied by whom and when." *Hill v. Waters*, 2018 WL 11356706, at *6 (S.D. Ohio Feb. 2, 2018).[8]

At most, Eight Mile discusses two compositions (one of which involves only

---

[7] Eight Mile's failure to differentiate among the defendants is especially salient given that WhatsApp's music feature did not exist until March 2025. *See* page 4, *supra*.

[8] *See also*, *e.g.*, *Dorchen/Martin Assocs. v. Brook of Cheboygan, Inc.*, 838 F. Supp. 2d 607, 611 (E.D. Mich. 2012) (dismissing claim) (citing *Nat'l Bus. Dev.*); *Ford Motor Co. v. Autel US, Inc.*, 2015 WL 5729067, at *4-5 (E.D. Mich. Sept. 30, 2015) (same); *Rassamni v. Fresno Auto Spa, Inc.*, 2018 WL 4616388, at *3-4 (E.D. Cal. Sep. 24, 2018) (dismissing complaint that had "no allegations as to how Defendants unlawfully appropriated the Copyrighted Materials, such as the forms in which the materials were reproduced, how the materials were used, or the timeframe of the reproduction"); *Taylor v. IBM*, 54 F. App'x 794, 794 (5th Cir. 2002) (plaintiffs "failed to allege specific acts of infringement by each defendant, thereby failing to adhere to … [Rule] 8(a)"); *LivePerson, Inc. v. 24/7 Customer, Inc.*, 83 F.Supp.3d 501, 509 (S.D.N.Y. 2015) (dismissal where time of infringement wasn't alleged).

"cover" versions) that allegedly "remain available on Meta's services" after Meta's acknowledged takedown. ECF No. 1, PageID.5, ¶ 9. Even those allegations lack adequate factual support, such as which defendant engaged in copying, when, where, and how. *Id.* The Complaint attempts to skate by on broad generalizations—made "on information and belief"—that unidentified compositions "have been reproduced and synchronized with visual content on Meta's services across millions of videos, which have been viewed **billions** of times." *Id.* at PageID.2, ¶ 3. But fanciful estimates are not a substitute for well-pleaded facts. In any event, belying their extravagant claims, Eight Mile never identifies a single example of an allegedly infringing post or story across any of the three Meta services at issue.

Eight Mile will doubtless point to its allegations that "Meta has been storing, reproducing, and distributing … Eight Mile Compositions without a license"; that Meta has "reproduced and stored" the compositions "in its Music Libraries"; and that infringement occurs "[e]ach time a user requests to use a copy or uses one of Meta's tools or features[.]" *Id.* at PageID.17, ¶¶ 53, 55, 56. But these are mere conclusions that don't come close to satisfying established pleading standards. Among other questions the Complaint does not answer:

- What specific content on Meta's services allegedly infringed Eight Mile's copyrights in each of the 243 EMS Compositions?

- Where on Meta's services are the allegedly infringing copies located?

- Where, when, how, and by whom were the alleged infringing copies

11

added to Meta's services?

- When did Eight Mile first identify the alleged infringements, and what, if anything, did Eight Mile do to address any purported concerns it had?

Without answers to these questions, neither Meta nor the Court can "meaningfully evaluate the plausibility of [Eight Mile's] allegations regarding" its "copyrighted . . . content." *Blizzard Ent., Inc. v. Lilith Games (Shanghai) Co. Ltd.*, 149 F. Supp. 3d 1167, 1175 (N.D. Cal. 2015); *see also Nat'l Bus. Dev. Servs.*, 299 F. App'x at 512.[9]

### B. Eight Mile's Failure to Identify the Allegedly Infringing Copies Deprives Meta of a Full and Fair Opportunity to Defend Itself

The Complaint's obvious deficiencies also hamstring Meta's ability to evaluate its potential defenses that would result in dismissal or narrowing of the case, including whether the statute of limitations bars particular claims; whether Meta has express or implied licenses to use the EMS Compositions; whether Meta's alleged conduct is protected as fair use; whether the "tools" that Eight Mile complains about are capable of substantial non-infringing use, precluding secondary liability; and whether the DMCA precludes monetary liability relating to user-generated content.

To highlight just a few examples, without knowing *when* the alleged

---

[9] We expect Eight Mile to argue that Meta's motion should be denied for the same reasons as in *Epidemic Sound, AB v. Meta Platforms, Inc.*, No. 22-cv-04223-JSC (N.D. Cal. Nov. 28, 2022), ECF No. 37. But the decision in *Epidemic Sound*—an unpublished two-page order—not only doesn't control here, but also lacks any persuasive force; indeed, the order contains virtually no explanation of its rationale. In any event, *Epidemic Sound* is readily distinguishable; it involves a different plaintiff with a different business model (paid subscriptions), different compositions (soundtracks), and only one Meta defendant (not three).

infringement occurred, Meta is constrained from showing that Eight Mile has not adequately pleaded that any infringement falls within the limitations period. *See* 17 U.S.C. § 507. And while Eight Mile seeks an eye-popping statutory damages award, copyright registration is a prerequisite to statutory damages (*see* 17 U.S.C. § 412), and the availability of statutory damages is impossible to assess without information regarding the timeline between first publication of the works, their registration, and the beginning of the alleged infringement. This omission matters because courts have not hesitated to declare a "request for statutory damages … squarely foreclosed by statute" when presented with adequate information in a complaint. *Trent P. Fisher Enters., LLC v. SAS Automation, LLC*, 2021 WL 1209637, at *7-9 (S.D. Ohio Mar. 31, 2021) (dismissing claim for statutory damages); *Allen Trench Safety Corp. v. Ozark Laser Sys.*, 2015 WL 4475645, at *7 (W.D. Mich. July 21, 2015) (same).

Similarly, without knowing *which user-generated content* forms the basis for Eight Mile's claims, Meta cannot definitively demonstrate that DMCA safe-harbor protections bar some or all of those claims. The DMCA precludes monetary liability for online service providers that comply with its requirements "by reason of the storage at the direction of a user" of infringing content on their systems. 17 U.S.C. § 512(c)(1). In other words, to the extent that Eight Mile's claims are focused on user-generated content, Meta is entitled to show that it is not monetarily liable because it conforms to the DMCA's safe-harbor requirements. But while Meta is

13

confident that it qualifies for the safe harbor and thus has a full defense to monetary liability, the vague nature of Eight Mile's allegations makes it impossible for Meta to know what specific conduct is at issue, let alone to tailor its defenses under the DMCA (and otherwise) to *particular* instances of alleged infringement.

## II.   EIGHT MILE'S SECONDARY LIABILITY CLAIMS ALL FAIL BECAUSE IT HAS NOT ADEQUATELY ALLEGED UNDERLYING INFRINGEMENT BY USERS

Eight Mile's three claims for secondary liability—inducement, contributory infringement, and vicarious infringement based on user-generated content—each fail because it has not plausibly alleged an underlying direct infringement by Meta's users, a basic prerequisite for each claim. Put simply, "[t]here can be no contributory infringement without a direct infringement." *Bridgeport Music, Inc. v. Diamond Time, Ltd.*, 371 F.3d 883, 889 (6th Cir. 2004).[10]

As shown above, Eight Mile has failed to adequately allege that even a single Meta user engaged in even a single instance of direct infringement. The Complaint says nothing at all about any specific users, posts, dates, or infringed compositions. The most it musters is a conclusory reference that ***unknown*** "users" have engaged in "direct infringement" "each time [they] download, stream, or synchronize a copy

---

[10] *See also*, *e.g.*, *NCR Corp. v. Korala Assoc.*, *Ltd.*, 512 F.3d 807, 816 (6th Cir. 2008) (requiring a "direct copyright infringement [by] a third-party" for contributory infringement claim); *Tomelleri v. SunFrog, LLC*, 721 F. Supp. 3d 566, 572 (E.D. Mich. 2024) (a "secondary copyright infringement claim will not survive a motion to dismiss if no direct infringement claim has plausibly been alleged").

of an Eight Mile Composition." ECF No. 1, PageID.18, 20, ¶¶ 63, 71. That's not enough. Because there are no details supporting these conclusory allegations—such as identifying a Meta user actually downloading, streaming, or synchronizing an EMS Composition, the secondary infringement claims go nowhere. *See*, *e.g.*, *Tomelleri*, 721 F. Supp. 3d at 578. They should accordingly be dismissed.

## III.   EIGHT MILE'S CONTRIBUTORY COPYRIGHT INFRINGEMENT CLAIM FAILS FOR ADDITIONAL REASONS

Even if Eight Mile had adequately alleged direct infringement by Meta users, it hasn't plausibly alleged the other required elements for contributory infringement.

"One infringes contributorily by intentionally inducing or encouraging direct infringement." *Grokster*, 545 U.S. at 930 (citing *Gershwin Pub. Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971)). That requires more than mere "knowledge … of actual infringing uses" (*id.* at 937); a defendant must also engage in conduct reflecting a "culpable intent" to cause infringement (*id.* at 934). In other words, a plaintiff must allege "culpable" affirmative conduct that's intended to cause or enable infringement; a mere failure to act is not sufficient. *Id.* at 937.

The Sixth Circuit similarly requires that a defendant not only have knowledge of specific infringing activity, but also must have acted affirmatively to "induce[], cause[], or materially contribute[] to the infringing conduct of another." *Bridgeport Music*, 371 F.3d at 889; *see also NCR Corp.*, 512 F.3d at 816 (same). Of course, the Sixth Circuit's test "must be construed consistently with *Grokster*." *Concord Music*

*Grp., Inc. v. X Corp.*, 2024 WL 945325, at *7 (M.D. Tenn. Mar. 5, 2024) (rejecting secondary infringement theory that was not "consistent with either *Grokster* or the general law of secondary liability").

Critically, the Copyright Act does not expressly provide for secondary liability. *See Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 434 (1984). Instead, the court-created cause of action for contributory copyright infringement "emerged from common law principles" of secondary liability, *Grokster*, 545 U.S. at 930; in particular, from common law aiding-and-abetting liability, *see Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 764 (2011) (explaining that "contributory infringement" under patent law means "the aiding and abetting of direct infringement by another party").

The Supreme Court recently detailed the standard for aiding-and-abetting, holding that it requires "conscious[] and "culpabl[e]" conduct demonstrating "blameworthiness." *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 489, 493 (2023); *see also Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos,* 605 U.S. 280 (2025) (relying on *Twitter* and explaining that a gun manufacturer "does not aid and abet" when it "merely knows that 'some bad actors' are taking 'advantage' of its products"). Requiring affirmative, "culpable" conduct—*i.e.*, "active abetting" of a "wrongful act," rather than mere "passive assistance"—is essential to avoiding "boundless" secondary liability. *Twitter*, 598 U.S. at 488-89, 499.

16

These principles make clear that Eight Mile has failed to state a contributory infringement claim.[11]

*First*, Eight Mile has failed to plausibly allege that the Meta Defendants "know or have reason to know of the direct infringement" by users through user-generated content. *NCR Corp.*, 512 F.3d at 816. To do so, Eight Mile must allege "more than a generalized knowledge . . . of the possibility of infringement." *Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1072 (9th Cir. 2013).[12]

Eight Mile hasn't come close to satisfying that burden. It can't simply "parrot the legal standard" by asserting that "Meta has actual knowledge of the infringing activity occurring on its [services]," ECF No. 1, PageID.20,¶ 73, because alleging legal conclusions is "insufficient to state a claim[.]" *Michalak v. Mich. State Police*, 2025 WL 2159028, at *3 (E.D. Mich. July 30, 2025) (McMillion, J.). Eight Mile doesn't make any factual allegations that Meta knew of any user-generated content

---

[11] The Supreme Court will soon consider the standard for contributory infringement. *See Cox Commc'ns, Inc. v. Sony Music Ent.*, No. 24-171. Because *Cox* may clarify the legal standards for Plaintiffs' secondary liability claims, Meta expressly preserves all arguments relating to the issues presented in *Cox*.

[12] *See also Bus. Casual Holdings, LLC v. YouTube, LLC*, 2023 WL 6842449, at *2 (2d Cir. Oct. 17, 2023) (affirming dismissal of contributory infringement claim where "[t]here [was] not a single allegation … that YouTube had any knowledge of [direct infringer's] use of the three allegedly infringing videos until YouTube received Business Casual's notifications of claimed infringement"); *Zagorsky-Beaudoin v. Rhino Ent. Co.*, 2019 WL 4259788, at *9 (D. Ariz. Sept. 9, 2019) (dismissing contributory infringement claim because plaintiff alleged "no facts that Defendant eBay knew of any direct infringement of [plaintiff's] alleged copyright").

containing music that was uploaded by users (or identify any such content). As to user-generated content involving music from Meta's Music Library, Eight Mile's allegations of Meta's knowledge are limited to: (i) Meta's licenses with Audiam in 2020 and 2023 and (ii) Meta's removal of the EMS Compositions from its Music Library in 2025. ECF No. 1, PageID.3-4, ¶¶ 6, 9. Neither allegation helps Eight Mile.

Starting with Audiam, Eight Mile's allegations show the opposite of "actual knowledge" of user infringement. Audiam's representative in prior negotiations told Meta that "Audiam was authorized to represent EMS." *See* page 7, *supra*. Audiam told EMS the same thing, and EMS even provided Audiam with "a list of compositions that EMS claimed to own" to facilitate the negotiations. *Id.* Far from showing "actual knowledge" of infringement, these allegations instead show that the Audiam licenses covered the compositions—or, at minimum, the parties' good-faith understanding that the licenses did. Either way, there was no "actual knowledge."

As to Meta's 2025 removal of the EMS Compositions from its Music Library (ECF No. 1, PageID.4, ¶ 9), removal due to threatened litigation doesn't constitute "actual knowledge" of infringement. In the DMCA context, for example, removing challenged works is "miles away from substantive proof of copyright ownership or infringement," *Schneider v. YouTube, LLC*, 674 F. Supp. 3d 704, 719 (N.D. Cal. 2023); it doesn't "establish actual or 'red flag' knowledge." *UMG Recordings, Inc. v. Shelter Cap. Partners LLC*, 718 F.3d 1006, 1021 n.12 (9th Cir. 2013).

Nor can Eight Mile allege actual knowledge of direct infringement by users by claiming to have "brought this matter to Meta's attention." ECF No. 1, PageID.4 ¶ 9. Eight Mile has not alleged (nor could it) that it provided a takedown notice that identified which of its compositions "were infringed, who infringed them, or when the infringement occurred." *Luvdarts*, 710 F.3d at 1073. *Luvdarts* is directly on point; there, the Ninth Circuit affirmed the dismissal of a contributory infringement claim because the plaintiff's "notices" to AT&T were just lists "of every title copyrighted" and thus "indistinguishable from a generalized notification that infringement is occurring." *Id*. Eight Mile's allegations are also "indistinguishable from a generalized notification," and thus equally warrant dismissal.

*Second*, Eight Mile doesn't allege facts that plausibly support an inference that Meta "intentionally induc[ed] or encourage[ed] direct infringement," as required by *Grokster*, 545 U.S. at 930, 936. Nor has Eight Mile plausibly alleged that Meta "induce[d], cause[d] or materially contribute[d]" to the alleged infringing activity, in the Sixth Circuit's framing of the test. *Bridgeport Music*, 371 F.3d at 889; *NCR Corp.*, 512 F.3d at 816. Beyond the bare legal conclusion that "Meta knowingly causes and materially contributes" to (unidentified) direct user infringement, *see* ECF No. 1, PageID.20, ¶ 73, the Complaint says almost nothing about ***how***, in Eight Mile's view, Meta either "caused" or "materially contributed" to that activity.

To the extent that Eight Mile is pursuing a "broad theory that [Meta] is liable

19

for all of the infringement done on its [services]" merely because Meta hosts content, that theory fails under the "general law of secondary liability." *Concord Music Grp.*, 2024 WL 945325, at *7-8; *cf. Twitter*, 598 U.S. at 488-89 (requiring affirmative "aiding and abetting" conduct and holding insufficient complaint alleging only that social media platforms hosted terrorists' messages).

"[A] theory of comprehensive general liability for infringement across [a] platform" can't be based on "merely hosting infringing content, until it is subject to a takedown notice"; that conduct alone does not constitute "material contribution." *Concord Music Grp.*, 2024 WL 945325, at *7-8; *see also Sony Discos, Inc. v. E.J.C. Fam. P'ship*, 2010 WL 1270342, at *5 (S.D. Tex. Mar. 31, 2010) ("'Material contribution' must mean promoting and sustaining infringing activities, not merely providing a site on which some infringing activity may occur."); *Twitter*, 598 U.S. at 500 ("mere passive nonfeasance" does not support a secondary liability claim).

Nor can Eight Mile adequately allege contributory infringement by stating that some unidentified users may use "Meta's tools or features to create a new audiovisual work." ECF No. 1, PageID.20, ¶ 71. Here, too, *Concord Music Group* is instructive. The court largely dismissed a contributory infringement claim because Twitter's allegedly "problematic practices" (*e.g.*, purported monetization of infringing tweets and the ease of uploading "infringing audiovisual files") were simply "general feature[s] of the platform" that make it "easier for all of its users"

20

rather than a "material contribution" to infringement. 2024 WL 945325, at *7.

Eight Mile asserts that Meta "promoted … the use of tools and features" (such as a "Trending" category and basic searchability) allowing users to select, upload, and incorporate audio into their posts and stories that could "***result*** in infringement." ECF No. 1, PageID.14, 19, ¶¶ 46-47, 64 (emphasis added). But the features and tools that Eight Mile complains about merely allow users to locate and engage with content; promoting the lawful use of those tools as a way to interact with social media services does not constitute "intentionally inducing or encouraging direct infringement," as *Grokster* requires. *Grokster*, 545 U.S. at 930.

Such "unremarkable" functionality does not make Meta secondarily liable simply because it is not "fence[d] off completely from infringers." *Concord Music Grp.*, 2024 WL 945325, at *7. That is particularly true where, as here, the applicable Terms of Use expressly prohibit users from engaging in copyright infringement on their services. *See* page 4, *supra*.[13]

And as for Eight Mile's alternative allegation that Meta has "failed to develop or meaningfully implement filtering tools" to minimize potentially infringing

---

[13]Meta respectfully requests the Court take judicial notice of those Terms. Courts routinely take judicial notice of contract terms, including Meta's, because they are publicly available. *See Force v. Facebook, Inc.*, 934 F.3d 53, 60 (2d Cir. 2019) (taking judicial notice of Facebook's Terms of Service); *Zhang v. Twitter Inc.*, 2023 WL 5493823, at *2-3 (N.D. Cal. Aug. 23, 2023), *aff'd*, 2025 WL 66050 (9th Cir. Jan. 10, 2025) (taking judicial notice of Twitter's Terms).

activity, ECF No. 1, PageID.19, ¶ 64, any such alleged "failure" does not qualify as an "affirmative" or "active step" in inducing infringement. *See Grokster*, 545 U.S. at 939 n.12 (a mere "failure to take affirmative steps to prevent infringement" cannot trigger secondary liability); *Cobbler Nev., LLC v. Gonzales*, 901 F.3d 1142, 1148-49 (9th Cir. 2018) (dismissing contributory infringement claim because a "failure to 'secure, police, and protect'" against infringement does not constitute the actionable *affirmative* conduct required by *Grokster*).

In fact, as the copyright holder, Eight Mile—not Meta—is responsible for identifying alleged infringements of its works. "Copyright holders know precisely what materials they own, and are thus better able to efficiently identify infringing copies than service providers … who cannot readily ascertain what material is copyrighted and what is not." *UMG Recordings,* 718 F.3d at 1022; *Capitol Recs., LLC v. Vimeo, LLC*, 826 F.3d 78, 98 (2d Cir. 2016) (the DMCA "relieves the service provider of obligation to monitor for infringements posted by users").

## IV.   EIGHT MILE'S INDUCEMENT "CLAIM" IS NOT A STANDALONE CAUSE OF ACTION

Eight Mile's other secondary liability claim—for "[i]nducement" of copyright infringement—is not a standalone cause of action and should be dismissed for that reason alone. It is an alternative theory articulated in *Grokster* as a subspecies of contributory liability that occurs when one "actively and knowingly aids and abets another's direct infringement." 545 U.S. at 936 (quotation marks and citation

omitted). Since *Grokster*, courts have routinely dismissed claims for "inducement" because they cannot exist "separately from a claim for contributory infringement." *KBL Corp. v. Arnouts*, 646 F. Supp. 2d 335, 345-46 (S.D.N.Y. 2009).[14]

No court within the Sixth Circuit has treated an inducement claim as anything but an alternative theory of contributory infringement. *See Tomelleri*, 721 F. Supp. 3d at 572. As a result, it should be dismissed for the same reasons as Eight Mile's contributory infringement claim. *See* Parts II-III, *supra*.

## V.   EIGHT MILE HAS NOT ADEQUATELY PLEADED A VICARIOUS INFRINGEMENT CLAIM

Eight Mile's vicarious liability claim should be dismissed because the Complaint has not adequately alleged that Meta "profit[ed] from direct infringement while declining to exercise a right to stop or limit it." *Grokster*, 545 U.S. at 930.

*First*, the Complaint has not plausibly alleged that Meta profited from, or had a direct financial interest in, any direct infringement. Eight Mile makes the conclusory assertion that Meta has "enjoyed massive profits at [EMS's] expense," ECF No. 1, PageID.5, ¶ 11, but never says ***how*** Meta has profited from any infringement of its compositions. It's not enough to offer unexplained references to

---

[14] *See also Capitol Recs., Inc. v. MP3tunes, LLC*, 2009 WL 3364036, at *4 (S.D.N.Y. Oct. 16, 2009) ("[T]his Court cannot find that inducement to infringe is a separate claim from contributory infringement," and dismissing purported "inducement of infringement" claim); *IO Grp., Inc. v. Jordon*, 708 F. Supp. 2d 989, 999 (N.D. Cal. 2010) (an inducement "claim" is "not a separate cause of action but is more properly considered a species of contributory infringement").

"advertising, sponsored post[s], and subscription fees," *id*. at PageID.22, ¶ 81, without linking that alleged revenue to an "obvious and direct financial interest ***in the infringement***." *Gordon v. Nextel Commc'ns & Mullin Advert., Inc.*, 345 F.3d 922, 925 (6th Cir. 2003) (emphasis added); *see also Grokster*, 545 U.S. at 930 n.9 (defendant must "profit[] directly from the infringement").

Even taken as true, mere incidental profits that are not directly tied to infringement activity cannot establish vicarious liability. "[T]he essential aspect of the 'direct financial benefit' inquiry is whether there is a causal relationship between the infringing activity and any financial benefit a defendant reaps." *Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004). Here, Eight Mile doesn't identify any such "causal relationship" between the purported infringement of its compositions and the generalized revenue streams that the Complaint describes. *See* ECF No. 1, PageID.22, ¶ 81. For example, even if Meta received "periodic payments" from users, that does not "constitute receiving a 'financial benefit directly attributable to the infringing activity'" unless "the value of the service lies in providing access to infringing material." *Ellison*, 357 F.3d at 1079. Nothing like that was pleaded with any specifics.[15] Moreover, it's not plausible that users of Facebook,

---

[15] *See White v. DistroKid*, 738 F. Supp. 3d 387, 401 (S.D.N.Y. 2024) (dismissing vicarious liability claim because plaintiff "failed to show that the infringing activity has a direct causal relationship to [defendant's] receipt of . . . monthly access fees"); *Zagorsky-Beaudoin*, 2019 WL 4259788, at *9 (dismissing vicarious liability claim that contained "no factual allegations" that a particular song on eBay's platform

Instagram, and WhatsApp "value" those services because of "access to [allegedly] infringing material." Because Eight Mile hasn't alleged a direct financial benefit due to infringement, its vicarious liability claim must be dismissed.

*Second*, Eight Mile fails to plausibly allege that Meta has any practical ability to "supervise or control" the countless posts and stories that its "billions of users" (ECF No. 1, PageID.2, ¶ 2) upload and filter out infringing conduct. *DistroKid*, 738 F. Supp. 3d at 400. Especially given that volume of content, Meta "has no 'practical ability' to determine what may or may not be infringing." *Masck v. Sports Illustrated*, 2013 WL 2626853, at *7 (E.D. Mich. June 11, 2013) (reaching that conclusion with respect to Amazon, as a platform provider). Similarly here, the Court should dismiss the vicarious infringement claim due to Eight Mile's failure to "put forth factual allegations that demonstrate [Meta] could plausibly verify the copyright status of each and every piece of [content]." *Id.*; *see also Luvdarts*, 710 F.3d at 1072 ("Luvdarts's failure to allege that [defendants] have at least something like a capacity to supervise is fatal to a claim of vicarious liability.").

## CONCLUSION

The Court should dismiss this lawsuit under Rule 12(b)(6).

By: /s/ *Matthew D. Ingber*　　　　

---

"affected Defendant eBay's user base in any way" or that eBay "had a direct financial interest in others' alleged direct infringement").

Dated: September 18, 2025

MAYER BROWN LLP

Archis A. Parasharami
1999 K Street NW
Washington, DC 20006-1101
aparasharami@mayerbrown.com
Tel: (202) 263-3000

Andrew S. Rosenman (P54869)
71 South Wacker Drive
Chicago, Illinois 60606
arosenman@mayerbrown.com
Tel: (312) 782-0600

Matthew D. Ingber
Allison Aviki (admission pending)
Rory K. Schneider (admission pending)
David Yolkut
1221 Avenue of the Americas
New York, New York 10020
mingber@mayerbrown.com
aaviki@mayerbrown.com
rschneider@mayerbrown.com
dyolkut@mayerbrown.com
Tel: (212) 506-2500

*Attorneys for Defendants Meta Platforms, Inc., f/k/a*
*Facebook, Inc.; Instagram, LLC; and WhatsApp LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on September 18, 2025, I electronically filed the foregoing paper(s) with the Clerk of the Court using the electronic filing system, which will provide electronic notice to all counsel of record.

By: /s/ *Matthew D. Ingber*
Matthew D. Ingber